CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

July 29, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Lauren Mihalic-Bandy
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00549 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ROBERT WHITT, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff William Robinson, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Robert Whitt, Lt. Sapp, and Sgt. Hite. (*See* Compl. [ECF No. 1].) This matter is before the court on Defendants' motion to dismiss. (ECF No.13). For the following reasons, the court will grant the motion to dismiss in part and deny it in part.

## I.    BACKGROUND

This matter stems from events that allegedly occurred while Robinson was incarcerated at the Halifax Correctional Unit (the "jail") in South Boston, Virginia. (*See* Compl. at 2.) Whitt is the superintendent at the jail. (*See id.* at 1; *see also* ECF No. 14 at 1.) Sapp is a lieutenant at the jail and Hite is a sergeant. (*See id.*) Robinson makes the following factual allegations in his complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

Robinson alleges that on February 12, 2025, at approximately 6:00 a.m., he was "told that [he] had a transportation run" for a medical appointment. (*See* Compl. at 2, 7.) Robinson then allegedly told Hite and Correctional Officer ("C.O.") Lloyd[1] that "large restraints would

---

[1] Robinson did not name Lloyd as a defendant in this action. (*See* Compl.)

be necessary for [Robinson][] because [he] knew that smaller restraints would be too small." (*Id.* at 3.) According to Robinson, his knowledge that larger restraints would be necessary was based on his "previous experience in the Virginia Department of Corrections [("VDOC")] having had to be placed into restraints[] which were too small and too tight[] in the past." (*Id.*)

At approximately 6:15 a.m. on February 12, Robinson was allegedly taken "to the school building" where he was strip-searched and given a change of clothes. (*Id.* at 4.) Then, Hite allegedly handcuffed Robinson using cuffs "that were too small." (*Id.*) Robinson claims that he told Hite that the cuffs were too small and observed that Hite had a pair of larger cuffs in his pocket. (*Id.*) Hite then allegedly attempted to place the larger cuffs on Robinson but realized that they "would not allow a black box mechanism to close and secure" the cuffs. (*Id.*) According to Robinson, Hite removed the larger cuffs from him and replaced them with the smaller cuffs. (*Id.* at 5.) After Robinson allegedly told Hite that the cuffs were too small and "were hurting [his] wrist badly," Hite supposedly responded by stating, "Oh you'll be alright." (*Id.*) According to Robinson, the smaller cuffs "were placed too tightly on [his] wrist, were beginning to cut [his] circulation off[,]" and were "pressing against [his] bones, causing [him] great pain." (*Id.*) Robinson also claims that, at the time, his "thinking became distorted and reflected [his] extreme stress and anxiety" and that "[n]othing was making sense to [him]."[2] (*Id.* at 6.)

Robinson alleges that he was then placed in a transportation van driven by C.O. Jackson with C.O. Lyle as a passenger.[3] (*Id.*) According to Robinson, he made Jackson and

---

[2] Robinson alleges that C.O. Mariana observed this initial interaction between Robinson and Hite, but that Mariana "failed to intervene on [Robinson's] behalf and said nothing." (Compl. at 6.) Robinson did not name Mariana as a defendant in this action. (*See* Compl.)

[3] Robinson did not name Jackson or Lyle as defendants in this action. (*See* Compl.)

Lyle aware that he was in pain and needed larger cuffs, "or in the alternative to have the cuffs loosened temporarily until larger cuffs were provided." (*Id.*) Lyle then allegedly told Robinson that she would "take a look at the cuffs" after the van arrived at its destination. (*Id.* at 7.) Upon arrival, Lyle allegedly attempted to loosen the cuffs but discovered that she could not do so. (*Id.*) Robinson alleges that Lyle then stated, "[T]he cuffs are too small for your wrist," and told Robinson that she did not have any larger cuffs and accordingly needed to place the small cuffs back on him. (*Id.*) According to Robinson, the black box mechanism exacerbated his pain as it restricted normal movement of his arms, wrists, and hands. (*Id.*)

After his medical appointment was complete, Jackson and Lyle placed Robinson back in the transportation van. (*Id.*) During the return trip to the jail, he claims his "pain and injury worsened each minute and mile that dragged on." (*Id.* at 8.) Robinson further claims that he "began to feel hopeless" and "wanted to sleep to take away the pain, but could not, because the pain was too extreme." (*Id.*) According to Robinson, his arms, wrists, and hands became "swollen[] and had turned blue in color." (*Id.* at 9.) Robinson further claims that having to wear the small cuffs "caused him pain for approximately nine and a half hours." (*Id.*)

Upon his return to the jail, Robison alleges that Sapp and Hite "opened the door of the van," and that Robinson "emphatically" told the officers, "[P]lease don't grab my hands." (*Id.*) In response, Sapp and Hite allegedly "agreed and lifted [Robinson] up under his arm pits." (*Id.*) According to Robinson, Sapp and Hite then observed that Robinson's arms, hands, and wrists were swollen and blue in color, and observed cuts on his arms and wrists. (*Id.*)

Robinson alleges that he was then escorted back to the school building by Sgt. Gilmore and Captain Lipscomb.[4] (*Id.* at 10.) According to Robinson, Gilmore and Lipscomb both

---

[4] Robinson did not name Gilmore or Lipscomb as defendants in this action. (*See* Compl.)

observed the swollen condition of Robinson's arms, wrists, and hands;  "the blue color of [Robinson's] skins on his arms, wrist[s], and hands; and "the cuts on [Robinson's] wrist[s]." (*Id.*) Lipscomb then allegedly said, "[H]e needs to go to medical," and Gilmore agreed to take him. (*Id.*)

While at medical, Robinson was allegedly seen by Nurse Wade.[5] (*Id.*) After examining Robinson, Wade allegedly exclaimed, "Oh[] that's bad, you'll have permanent scars from that!" (*Id.*) Wade allegedly "checked" Robinson's blood pressure and discovered that it "was extremely high." (*Id.*) According to Robinson, Wade failed to document the cuts, swelling, and discoloration to his body. (*Id.*) Robinson further alleges that he was "seen by the medical department several times after" February 12, 2025, when he "complain[ed] of pain and injuries" caused by Defendants. (*Id.* at 11.)

According to Robinson, Sapp "allowed" Hite to place improperly sized handcuffs on Robinson which caused him harm. (*Id.*) Robinson further claims that it was Sapp's "duty to supervise Hite" as Sapp was the watch commander for Hite's shift. (*Id.*) Robinson claims that Whitt caused him harm "because he was on duty in the capacity of the superintendent" and "carried out a policy or practice that led to [Robinson's] rights being violated." (*Id.*)

On August 8, 2025, Robinson executed his complaint. (ECF No. 1 at 15.) He seeks compensatory and punitive damages. (*Id.*)

On December 12, 2025, Defendants filed their motion to dismiss. (ECF No. 13.) Robinson filed a response in opposition (ECF No. 16), Defendants did not file a reply, and the motion to dismiss is ripe for disposition.

---

[5] Robinson did not name Wade as a Defendant in this action. (*See* Compl.)

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## III.    ANALYSIS

Robinson is pursuing his claims against Defendants under 42 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Robinson asserts Eighth Amendment

claims against Defendants.[6] (*See* Compl. at 12–14.) As to Hite, Robinson claims that the officer violated the Eighth Amendment by knowingly placing on Robinson handcuffs that were too small and failing to remove them, causing Robinson to suffer his alleged injuries. (*Id.* at 12–13.) Robinson claims that Sapp and Whitt violated the Eighth Amendment by "carr[ying] out a policy or practice" which resulted in Robinson being "forc[ed] . . . to wear improper restraints for [a] very long period[] of time." (*Id.* at 13–14.) The court addresses Robinson's claims against Defendants in turn.

## A. Official-Capacity Claims

Robinson is not clear as to whether he sues Defendants in their individual capacities, official capacities, or both. (*See* Compl.) But if Robinson sues Defendants in their official capacities, his claims against them must be dismissed. As noted, Robinson only seeks monetary damages against Defendants, who are state officials. (*See* Compl. at 15.) State officials sued in their official capacities for monetary damages are not "person[s]" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1978); *see also Fauconier v. Clarke*, 966 F.3d 265, 279-80 (4th Cir. 2020) ("[N]either States nor state officials acting in their official capacities constitute 'persons' within the meaning of [§ 1983] when sued for monetary relief.").

---

[6] VDOC records indicate that Robinson was sentenced to 21 years of active incarceration on November 15, 2016. *See* Inmate & Supervisee Locator, available at vadoc.virginia.gov/general-public/inmate-and-supervisee-locator (last visited July 28, 2026). These facts are properly considered by the court, even through they are not alleged in Robinson's complaint. *See* Fed. R. Evid. 201(b)(2) (permitting a federal court to take judicial notice of certain facts); *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (explaining that a federal court may take judicial notice of state-court proceedings that directly relate to the issues pending in the federal court.) Because Robinson was a convicted prisoner on February 12, 2025, when the events at issue allegedly occurred, his claims properly arise under the Eighth Amendment. *See Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022).

Accordingly, any official-capacity claims Robinson brings against Defendants must be dismissed.[7]

## B. Deliberate-Indifference Claim

As noted, Robinson brings his claim against Hite under the Eighth Amendment. (*See* Compl. at 12–14.) But Robinson does not expressly identify the nature of this claim in his complaint. (*See id.*) And as the Fourth Circuit has noted, "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference[]' while others constitute 'excessive force.'" *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). In their briefing, Defendants characterize Robinson's claim against Hite to be a deliberate-indifference claim. (*See* ECF No. 14 at 4.) And in his response, Robinson states that Hite's alleged "refusal to take the small cuffs off . . . amount[ed] to deliberate indifference . . . in violation of the [E]ighth [A]mendment." (ECF No. 16 at 2.) Based on these submissions, the court will address Robinson's claim against Hite under the rubric of deliberate indifference.

To state an Eighth Amendment deliberate-indifference claim, prisoners must satisfy a two-part test. *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025). "First, they must show 'deprivation of a basic human need' that is 'objectively sufficiently serious.'" *Id.* (quoting *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997)). This requires showing "a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.* (quoting *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995)) (internal quotation marks

---

[7] Defendants also argue that any official-capacity claims against them must be dismissed under principles of sovereign immunity. (*See* ECF No. 14 at 9–10.) But having concluded that such claims are properly dismissed on other grounds, the court need not—and will not—address the issue.

omitted). Second, a prisoner "must establish that the defendant had a sufficiently culpable state of mind, which requires either actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was actually drawn." *Hammock*, 146 F.4th at 360 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)) (internal quotation marks omitted). Deliberate indifference is "a very high standard" that requires more than alleged "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *abrogated on other grounds as recognized by Short v. Hartman*, 87 F.4th 593, 609–10 (4th Cir. 2023)).

In support of their motion to dismiss, Defendants argue that because Nurse Wade did not note any "cuts, swelling, or discoloration" on Robinson's hands, wrists, or arms, he has failed to show the objective component of his deliberate-indifference claim. (*Id.* at 6.) Relatedly, Defendants argue that Robinson has failed to show the objective component of his deliberate-indifference claim insofar as he has not "show[n] how using regular handcuffs exposed him to a substantial risk of serious harm." (*Id.* (citing *Zellers v. Dillman*, No. 7:22-cv-00479, 2023 WL 6218287 (W.D. Va. Sept. 25, 2023).) Finally, as to the subjective component of Robinson's claim against Hite, Defendants argue that Robinson's allegations—at worst—show that Hite was merely negligent in placing handcuffs that were too small on Robinson and failing to remove them. (*Id.*) The court is not persuaded by any of these arguments.

First, that Nurse Wade did not note any cuts, swelling, or discoloration on Robinson's body does not mean that he has failed to state a deliberate-indifference claim. As noted, Robinson claims to have suffered those injuries and alleges that Nurse Wade merely failed to document them. (*See* Compl. at 9–10.) At this preliminary stage, the court must take Robinson's allegations as true and cannot weigh them against potentially conflicting evidence

- 8 -

in the record. *See Brent v. City of Cumberland Police Dep't*, No. JKB-22-1349, 2023 WL 2457591, at *5 n.6 (D. Md. Mar. 10, 2023) (citing *Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434, 437 (D. Md. 2002)).

Second, Defendants' reliance on *Zellers* is misplaced. As an initial matter, *Zellers* was decided at summary judgment, *see* 2023 WL 6218287, at *1, whereas this case is before the court on Defendants' motion to dismiss. (*See* ECF No. 13.) At summary judgment, the burden on the plaintiff is markedly higher than at the motion to dismiss stage. *O'Reilly v. Med. Facilities of Am., Inc.*, No. 4:24-cv-00037, 2025 WL 1113225, at *5 n. 5 (W.D. Va. Apr. 15, 2025); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("A party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a higher burden than a party proceeding on a motion for summary judgment") (internal quotation marks omitted). Moreover, in determining that the applicable defendant was entitled to summary judgment on the plaintiff's deliberate-indifference claim, the *Zellers* court found it important that the plaintiff had been assessed by a physician "who did not think that his health issues . . . warranted use of different handcuffs." 2023 WL 6218287, at *5. But there is no indication that such an evaluation was conducted in this case.[8] Finally, the factual allegations at issue in *Zellers* are materially different than those at issue here. In *Zellers*, the plaintiff complained that his use of handcuffs caused his wrists to become discolored and swollen and claimed to have suffered "several lacerations." *Id.* at *2. But here, Robinson alleges that Hite's actions caused him to suffer (i)

---

[8] Although somewhat vaguely, Defendants appear to argue that, because Robinson does not identify any underlying medical condition that placed him at increased risk of injury from wearing tight handcuffs, he has failed to state a deliberate-indifference claim. (*See* ECF No. 14 at 6.) But Defendants do not cite—and the court is not aware of—any authority for such a proposition. And although the *Zellers* courts considered the plaintiff's underlying health conditions in its analysis, it did not hold that a plaintiff would need to show such a condition to state a deliberate-indifference claim. *See* 2023 WL 6218287, at *5.

swelling and discoloration to his hands, wrists, and arms; (ii) cuts to his arms and wrists; (iii) loss of circulation to his hands; (iv) permanent scarring; and (v) "severe" pain for approximately nine-and-a-half hours. (*See* Compl.) Robinson further claims that he was seen by medical staff at the jail "several times" after February 12, 2025, when he complained of further pain allegedly caused by Defendants' actions.[9] (*See id.*)

Third, when viewed in the light most favorable to Robinson, his allegations, if true, would show that Hite was not merely negligent by using handcuffs that were too small and failing to remove them. As noted, Robinson alleges that before Hite placed any handcuffs on him, he notified the officer that "large restraints would be necessary." (Compl. at 3.) Robinson further alleges that after Hite handcuffed him, he told the officer that the cuffs were "too small" and observed that Hite had a pair of larger cuffs in his pocket. (*Id.* at 4.) Hite then allegedly attempted to place the larger cuffs on Robinson but eventually removed them after he could not place a black box mechanism over the cuffs to secure them. (*Id.*) Robinson then allegedly told Hite that the cuffs "were hurting [his] wrist badly," and Hite allegedly responded by stating, "Oh, you'll be alright."[10] (*Id.* at 5.) Additionally, Robinson alleges that the cuffs "were placed too tightly on [his] wrist, were beginning to cut [his] circulation off[,]" and were "pressing against [his] bones, causing [him] great pain." (*Id.*) Although additional facts could affect the court's evaluation of Hite's mental state, as alleged, they arguably show that the

---

[9] Defendants do not address whether Robinson's alleged injuries were severe enough to satisfy the objective component of his deliberate indifference claim (*see* ECF No. 14), and the court will not address the issue *sua sponte*.

[10] Defendants do not address whether Hite's actions were reasonable under these circumstances (*see* ECF No. 14), and the court will not raise the issue *sua sponte*.

officer was more than merely negligent in placing the handcuffs on Robinson and failing to remove them.

For all these reasons, the motion to dismiss will be denied as to Robinson's deliberate-indifference claim.

## A. Supervisor Liability Claims

As noted, Robinson alleges that Sapp and Whitt violated the Eighth Amendment by "carr[ying] out a policy or practice" which resulted in Robinson being "forc[ed] . . . to wear improper restraints for a very long time."[11] (Compl. at 13–14.) In making these allegations, the court understands Robinson to assert supervisor liability claims against these Defendants.

Government officials like Sapp and Whitt cannot be held liable under § 1983 based on a theory of *respondeat superior. Iqbal*, 556 U.S. at 676. Instead, to state a claim against these Defendants, Robinson must show that each officer, "through his own individual actions, has violated the Constitution." *Id.* To state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[11] Although Robinson makes similar allegations against Hite in his complaint (*see* Compl. at 13), he clarifies in his response that his claim against the officer is based on his placement of too-small handcuffs on Robinson and his failure to remove them. (*See* ECF No. 16.)

*Wall v. Clarke*, No. 7:19-cv-00260, 2021 WL 5444754, at *4 (W.D. Va. Nov. 22, 2021) (quoting

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or

at least has been used on several different occasions and that the conduct engaged in by the

subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*,

751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). With respect to the second

element, "a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's

continued inaction in the face of documented widespread abuses.'" *Id.* Finally, as to the third

element, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link'

between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at

799.

Although Robinson claims that he was placed in too-small handcuffs on numerous

occasions while in VDOC custody (*see* Compl. at 3), his complaint lacks any allegations that

would support the second and third elements. Robinson does not plausibly allege that Sapp

or Whitt continuously failed to act in the face of "documented widespread abuses."[12]

*Montgomery*, 751 F.3d at 226. Moreover, Robinson does not plead any facts showing a causal

connection between Sapp and Whitt's alleged inaction and Robinson's claimed constitutional

injury. At bottom, Robinson's "conclusory assertions against [Sapp and Whitt] do not state a

cognizable claim of supervisor liability under § 1983." *Carter v. Ely*, No. 7:20-cv-00713, 2022

WL 801585, at *4 (W.D. Va. Mar. 15, 2022). Accordingly, Robinson's supervisor liability

claims against Sapp and Whitt will be dismissed.

---

[12] Robinson cites to certain health-services complaints, written complaints, and grievances concerning his alleged injuries (*see* Compl. at 3), but these documents were dated on or after February 12, 2025. (*See* ECF No. 1-2 at 1–21.)

## IV.    CONCLUSION

For the reasons stated above, the court will grant Defendants' motion to dismiss in part and deny it in part.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of July, 2026.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE